**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| U.S. ETHERNET INNOVATIONS, LLC, | ) | |
|     Plaintiff, | ) | 6:12-cv-00235-MHS-JDL |
| | ) | LEAD CASE |
|     v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| RICOH AMERICAS CORPORATION, | ) | |
|     Defendant. | ) | |
| | ) | |
| U.S. ETHERNET INNOVATIONS, LLC, | ) | Consolidated with: |
|     Plaintiff, | ) |     6:12-cv-00236-MHS-JDL |
| | ) |     6:12-cv-00237-MHS-JDL |
|     v. | ) |     6:12-cv-00329-MHS-JDL |
| | ) |     6:12-cv-00330-MHS-JDL |
| TRENDNET, INC., XEROX | ) |     6:12-cv-00351-MHS-JDL |
| CORPORATION, KONICA MINOLTA | ) |     6:12-cv-00366-MHS-JDL |
| BUSINESS SOLUTIONS U.S.A., INC., et al., | ) |     6:12-cv-00398 MHS-JDL |
| SHARP ELECTRONICS CORPORATION, | ) |     6:12-cv-00399-MHS-JDL |
| DIGI INTERNATIONAL INC., et al., | ) |     6:12-cv-00481-MHS-JDL |
| CIRRUS LOGIC, INC., YAMAHA | ) | |
| CORPORATION OF AMERICA, | ) | |
| CONTROL4 CORPORATION, SAMSUNG | ) | |
| ELECTRONICS CO., LTD., et al., | ) | |
| NETGEAR, INC., and | ) | |
| STMICROELECTRONICS N.V., et al., | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON INDEFINITENESS OF CERTAIN ASSERTED CLAIMS OF U.S. PATENT NOS. 5,307,459 AND 5,299,313**</u>

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     STATEMENT OF FACTS AND TECHNICAL SUMMARY ..........................................1

    A.    The '459 Patent ...........................................................................................2

    B.    The '313 Patent ...........................................................................................2

II.    LEGAL STANDARD......................................................................................................3

    A.    Summary Judgment Standard .....................................................................3

    B.    Legal Standard for Invalidity Due to Indefiniteness of a Patent Claim....................3

III.    ARGUMENT ..................................................................................................................4

    A.    Claims 1, 22, 34, 44, and 50 of the '459 Patent Are Indefinite Because They Lack Any Corresponding Structure for the "Means for Comparing" Limitation.............4

        1.    The '459 Patent Discloses Neither A Single Structure Nor Multiple Structures That May Reasonably Be Grouped Together To Perform The Recited Functions.........................................................................................5

        2.    The '459 Patent Fails to Disclose A Structure For The "Comparing" Function. ......................................................................................................6

        3.    Defendants Need Not Rely On Expert Evidence For This Court To Hold The Claims Invalid As Indefinite.................................................................9

    B.    Claim 13 of the '313 Patent is Indefinite Because It Lacks Any Corresponding Structure for the "Host Interface Means" Limitation. ............................................9

        1.    The '313 Patent Discloses Neither A Single Structure Nor Multiple Structures That May Reasonably Be Grouped Together To Perform The Recited Functions.......................................................................................10

        2.    Dr. Mitzenmacher's Declaration Is Counter To The Understanding of One of Ordinary Skill In The Art. ..................................................................11

    C.    Judge Ware's Opinion in *Acer* is Instructive and Cannot be Brushed Aside As Mere "Tentative, Preliminary Findings.".................................................................12

        1.    The *Acer* Court Found Claim 1 of the '459 Patent And Claim 13 of the '313 Patent To Be "Arguably Invalid" For Indefiniteness. .................12

        2.    The Second Claim Construction Order Should Be Upheld .......................12

        3.    Judge Ware's Legal Analysis Should Be Upheld. ....................................13

IV.    CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................3

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006)..........................................................................4

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008)..........................................................................3

*B. Braun Med., Inc. v. Abbott Labs.*,
   124 F.3d 1419 (Fed. Cir. 1997)..........................................................................4

*Blackboard, Inc. v. Desire2Learn, Inc.*,
   574 F. 3d 1371 (Fed. Cir. 2009).........................................................................4

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   2000 WL 1902191 (S.D. Ind. Dec. 19, 2000).......................................5, 13, 14, 15

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   296 F.3d 1106 (Fed. Cir. 2002)..............................................................13, 14, 15

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005)..........................................................................9

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012)............................................................................8

*Ergo Licensing v. Carefusion*,
   623 F.3d 1361 (Fed. Cir. 2012)..........................................................................9

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F.3d 1473 (Fed. Cir. 1998)..........................................................................3

*Halliburton Energy Serv., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008)..........................................................................3

*In re Donaldson Co.*,
   16 F.3d 1189 (Fed. Cir. 1994) (en banc)............................................................4

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)..........................................................................9

*Microsoft Corp. v. Motorola Inc.*,
   2013 WL 454268 (W.D. Wash. Feb. 7, 2013).................................................7, 8

*Negotiated Data Solutions, Inc. v. Apple, Inc.*,
    2012 WL 6494240 (E.D. Tex. Dec. 13, 2012) ........................................................................12

*Noah Systems, Inc. v. Intuit Inc.*,
    625 F.3d 1302 (Fed. Cir. 2012) ..............................................................................................9

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
    161 F.3d 696 (Fed. Cir. 1998) ................................................................................................3

*S3 Inc. v. nVIDIA Corp.*,
    259 F.3d 1364 (Fed. Cir. 2001) ..........................................................................................3, 4

## STATUTES

35 U.S.C. § 112 ¶ 2 ......................................................................................................................3

35 U.S.C. § 112 ¶ 6 ...............................................................................................................4, 5, 9

## RULES

Fed. R. Civ. P. 56(c) ....................................................................................................................3

Fed. R. Civ. P. 56(e) ....................................................................................................................3

Defendants are entitled to summary judgment of invalidity for indefiniteness as to claims 1, 22, 34, 44 and 50 of U.S. Patent No. 5,307,459 ("the '459 Patent") and claim 13 of U.S. Patent No. 5,299,313 ("the '313 Patent").[1]  The Northern District of California recently held that these claims are "arguably invalid" because they contain means plus function limitations that lack any corresponding structure.  (*See* Ex. I to Plaintiff's Opening Claim Constr. Brief ("(Feb. 22, 2013), ECF No. 158, Second Claim Constr. Order, *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 10-cv-03724 (N.D. Cal. Aug. 29, 2012), ECF No. 634 ("Second Claim Constr. Order").)  Specifically, claims 1, 22, 34, 44, and 50 of the '459 Patent are indefinite because they lack the corresponding structure for the "means for comparing" limitation and claim 13 of the '313 Patent is indefinite because it lacks the corresponding structure for the "host interface means" limitation.

## I.      STATEMENT OF FACTS AND TECHNICAL SUMMARY

The '459 and '313 Patents relate to local area networks (or "LANs"), and network adapters.  LANs are used to connect a small number of computers together in a limited area, and can also be used to connect to larger networks, such as the Internet.  A network adapter is a device that can be connected to a host computer to allow the host computer to communicate with the network.  When the '459 and '313 Patents were filed (in 1992), network adapters were plugged into the bus (a connection system that allows the host processor and host memory to connect to other devices) of a host computer.  Data was passed from the host memory, onto the bus, through the network adapter, and to the network.  Incoming data from the network also passed through the network adapter on the way to the host computer via the host bus.  The '459

---

[1] Plaintiff asserted a variety of claims across the '459 and '313 Patents against the various Defendants. While this Motion is filed by the Consolidated Defendants, each Defendant addresses only the terms and claim elements that appear in the patents and claims asserted against it in Plaintiff's Infringement Contentions. Nothing in this filing shall be construed to waive Plaintiff's requirement to assert a claim or patent against a Defendant pursuant to Local P.R. 3-1.

and '313 Patents disclose a specific network adapter architecture and claim certain features of that architecture.

### A.     The '459 Patent

The '459 Patent is directed to a network adapter that reduces the latency or delay that occurs when the host processor services an interrupt.  An interrupt is a request for attention from hardware or software to the host processor.  As the '459 Patent explains, in prior art systems, when an interrupt is generated by the network adapter to the host processor upon the completion of a data transfer, the host processor must first save its current environment or system parameters before servicing the interrupt.  The '459 Patent claims to reduce interrupt latency by generating an early indication signal before the interrupt signal.  Without the early indication signal, the host processor receives an interrupt after a data transfer, saves its parameters, and then services the interrupt.  By contrast, with the early indication signal, the host processor receives the early indication signal and saves its parameters while the data transfer is being completed.  This early indication signal allows the host processor to start servicing the interrupt immediately upon receipt.  The early indication signal thus reduces latency.

### B.     The '313 Patent

The '313 Patent is directed to a network adapter that manages transfers between the host computer and the network.  According to the disclosure in the '313 Patent, the host memory in prior art systems was typically used for transfers between the host computer and the network, taxing the host system's resources and reducing performance.  The alleged invention of the '313 Patent is a network adapter that has a buffer memory outside of the host memory that handles this coordination, thereby relieving the host system from having to manage the transfers.

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment "is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998); *see* Fed. R. Civ. P. 56(c).   Once the movant demonstrates the absence of a material fact, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see* Fed. R. Civ. P. 56(e).

### B.   Legal Standard for Invalidity Due to Indefiniteness of a Patent Claim

35 U.S.C. § 112 ¶ 2 requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  The definiteness requirement ensures that the claims notify the public of the scope of the patentee's rights. "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Serv., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).  The requirement exists "to avoid pure functional claiming." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

Means-plus-function claim limitations must also satisfy the requirements of Section 112 ¶ 2. *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001).  Whether a claim complies with the definiteness requirement of 35 U.S.C. § 112 ¶ 2 is a question of law. *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998).

Construction of a means-plus-function limitation includes two steps.  "First, the court must determine the claimed function.   Second, the court must identify the corresponding

structure in the written description of the patent that performs the function." *Applied Med. Res.
Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006) (internal citations omitted).
A structure disclosed in the specification qualifies as a "corresponding structure" if the
specification or the prosecution history "clearly links or associates that structure to the function
recited in the claim." *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).
Where means-plus-function language is employed in a claim, an applicant "must set forth in the
specification an adequate disclosure showing what is meant by that language.  If an applicant
fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out
and distinctly claim the invention as required by the second paragraph of section 112." *S3 Inc.*,
259 F.3d at 1367; *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc).  That is,
"claims written in 'means-plus-function' form must disclose the particular structure that is used
to perform the recited function."  *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F. 3d 1371, 1385-
86 (Fed. Cir. 2009). Failure to do so renders the structure insufficient to perform the recited
function and the claims indefinite.  *Id.*

## III.   ARGUMENT

### A.   Claims 1, 22, 34, 44, and 50 of the '459 Patent Are Indefinite Because They Lack Any Corresponding Structure for the "Means for Comparing" Limitation.

Claims 1, 22, 34, 44, and 50 of the '459 Patent requires "means for comparing the
counter to the … threshold value in the alterable storage location and generating an … indication
signal … responsive to a comparison of the counter and the alterable storage location."  This
"means for comparing" limitation is a "means-plus-function" limitation that is governed by 35
U.S.C. § 112 ¶ 6 and recites two functions: (1) "comparing the counter to the threshold value in
the alterable storage location" and (2) "generating an indication signal."  The Northern District
of California agreed that this "means for comparing" language sets forth these two functions.

(Second Claim Constr. Order at 8.)   And, with respect to claim 1, Plaintiff agrees.[2]  (Ex. F to Plaintiff's Opening Claim Constr. Brief at 4-5.)   Claims 1, 22, 34, 44, and 50 all disclose a "means comparing the counter to [some type of] threshold value in the alterable storage location and generating [some type of] indication signal … responsive to a comparison of the counter and the alterable storage location."   *See* '459 Patent.   Thus, claims 22, 34, 44, and 50 are also governed by 35 U.S.C. § 112 ¶ 6 and recite the two functions identified above.

### 1.   The '459 Patent Discloses Neither A Single Structure Nor Multiple Structures That May Reasonably Be Grouped Together To Perform The Recited Functions.

In discussing this claim limitation in the context of claim 1 of the '459 Patent in the Northern District of California case, Judge Ware recited the applicable legal standard:

> When dual functions must be performed by the "means," the patent document must disclose either a single structure that performs both functions or multiple structures, each of which performs one of the functions, but the multiple structures reasonably may be grouped together as subcomponents of a larger component that performs both functions.

(Second Claim Constr. Order at 8 (*citing Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 2000 WL 1902191, at *3 (S.D. Ind. Dec. 19, 2000) ("*Cardiac Pacemakers I*").)

Regarding the first function, "comparing the counter to the threshold value in the alterable storage location," Judge Ware found that the written description and figures of the '459 Patent recite the corresponding structure as the blocks labeled 224 and 318, identified as a "comparator."  (Second Claim Constr. Order at 10; '459 Patent at Figs. 14, 21.)  Plaintiff agrees that a "comparator" is the appropriate structure, and lists the same blocks as examples.  (Ex. F to Plaintiff's Opening Claim Constr. Brief at 4-5.)

---

[2] Plaintiff contends that the similar terms in the remaining independent claims of the '459 Patent "are not the subject of Defendant's [sic] pending motion to exceed the Court's limit on the number of terms to be submitted for construction."  Plaintiff's Opening Claim Constr. Brief at n.16.

Regarding the second function, "generating an indication signal to the host processor," Judge Ware found that the corresponding structures could only be the components labeled "Interrupt Controller 60" together with "Early Rcv Control 225." (Second Claim Constr. Order at 11; '459 Patent at Figs. 4, 14.) Plaintiff lists the same components as examples of the appropriate structure, identifying the structure as a "control block." (Ex. F to Plaintiff's Opening Claim Constr. Brief at 4-5.)

Judge Ware concluded that claim 1 was arguably invalid because: (1) none of the components that performed the "comparing" function could also perform the "generating" function; (2) none of the components that performed the "generating" function could also perform the "comparing" function; and (3) there was no intrinsic evidence that led the Court to find that a person of ordinary skill in the art would group these individual functional components into a single component.[3] (Second Claim Constr. Order at 11.)

Claims 22, 34, 44, and 50 of the '459 Patent have essentially the same "means for comparing" limitation as claim 1, and although Judge Ware did not specifically address claims 22, 34, 44, and 50 in his ruling, the same analysis and conclusion applies to these claims. Thus, claims 22, 34, 44, and 50 of the '459 Patent are also indefinite.

### 2.    The '459 Patent Fails to Disclose A Structure For The "Comparing" Function.

In its opening claim construction brief, Plaintiff proposed that the corresponding structure for the "comparing" function was a comparator and equivalents thereto. (Plaintiff's Opening Claim Constr. Brief at 18-19.) The comparators Plaintiff identifies, however, are purely

---

[3] Plaintiff's argument that, because Judge Ware merely identified structures corresponding to each of the recited functions, the claim term is not indefinite, ignores the more important point that Judge Ware found that claim 1 of the '459 Patent was "arguably indefinite." He so found because there is no disclosure in the specification that either (1) a single corresponding structure performs both functions recited by the "means for comparing" limitation or (2) multiple corresponding structures may reasonably be grouped together as subcomponents of a larger component that performs both functions.

functional descriptions and provide no structure whatsoever.  The '459 Patent does not disclose any structure, like circuitry or algorithms, within the comparators.  Accordingly, claims 1, 22, 34, 44, and 50 are indefinite as a matter of law.[4]

In *Microsoft Corp. v. Motorola Inc.*, 2013 WL 454268 (W.D. Wash. Feb. 7, 2013), Motorola asserted patent claims that included "means for decoding" and "means for using" limitations.  *Id.* at *4. Motorola contended that "the common specification disclosed a 'decoder' … understood by one of ordinary skill to be a known structure." *Id.* at *6-7.  Motorola bolstered its contention with an expert declaration explaining that the disclosed decoder was well-known in the art. *Id.* The court found that the specification provided only *examples* of a decoder and simply expressed that "some other electronic device" could be a decoder.  In the *only* location providing an affirmative definition for the decoder, the specification stated as follows: "The term 'decoder' will be used to refer expansively to all electronic devices that decode digital video content comprising a stream of pictures." *Id.* "Because neither the examples of a decoder, nor the definition of a decoder, identified in the specification amount to anything more than a programmed general computer or a functional description, the court require[d] disclosure of an algorithm corresponding to the 'means for decoding' and 'means for using' limitations." *Id.*  The court found no disclosure of a proper algorithm, and determined that "the 'means for decoding' limitations claim all corresponding structure under the sun by expansively defining the function in the specification as anything that decodes digital data. This definition render[ed] the 'means for decoding' limitation invalid for indefiniteness." *Id.* at *13.

---

[4] In its Responsive Claim Construction Brief, Defendants identified one of the comparators that Plaintiff lists as a corresponding structure, but only in the case where the claims of the '459 Patent are not to be found indefinite.  As Defendants state, while comparator 224 is the only structure that could perform the claimed function, Defendants maintain the structure is indefinite.

Like the decoders in *Microsoft*, the comparators identified by USEI amount to nothing more than functional descriptions, as evidenced by their illustration in Figures identified as "functional block diagrams." ('459 Patent at col. 4, lines 19-40 ("FIG. 14 is a receive indication functional block diagram … FIG. 24 is a download transmit complete functional block diagram … FIG. 31 is a complete threshold met functional block diagram …"). Simply drawing a box and labeling it a "comparator" does not disclose the structure of a comparator. As the *Microsoft* court explained:

> Although the specification describes how one of skill in the art would ascertain what blocks to consider when decoding, the specification provides no guidance as to how one of ordinary skill would actually decode the considered blocks. Thus, the court concludes that the specification contains no disclosure that supports Motorola's proposed algorithm (or any other algorithm) for corresponding structure to the decoding function required by the 'means for selectively decoding' limitation of claim 13 of the '375 Patent.

*Microsoft Corp.*, 2013 WL 454268 at *9. And while Plaintiff's expert, Dr. Mitzenmacher claims that "[a] person of ordinary skill in the art would readily understand that a comparator can be used to perform a comparison of values," he did not assert that the '459 Patent itself sufficiently discloses the structure of a comparator or detail why an ordinary artisan would arrive at this understanding given the '459 Patent's disclosure. (*See* Plaintiff's Opening Claim Constr. Brief, Decl. of Dr. Michael Mitzenmacher ¶ 10 ("Mitzenmacher Decl.").);*ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012) (to assess indefiniteness "we do not look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent."). Because "[t]he specification merely provides functional language and does not contain any step-by-step process for controlling the [] means," the claim limitation is also "indefinite for failure to disclose corresponding structure." *Ergo Licensing v. Carefusion*, 623 F.3d 1361, 1365 (Fed. Cir. 2012); *Noah Systems, Inc. v. Intuit Inc.*, 625 F.3d 1302, 1318 (Fed. Cir. 2012).

8

### 3. Defendants Need Not Rely On Expert Evidence For This Court To Hold The Claims Invalid As Indefinite.

Plaintiff's argument that patent claims cannot be found indefinite without expert testimony is wrong. (*See* Plaintiff's Opening Claim Constr. Brief at 23-24.) The Federal Circuit has upheld numerous findings of indefiniteness without expert testimony. *See*, *e.g.*, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005). In fact, the Federal Circuit has affirmed a district court's decision to refuse expert testimony regarding an indefiniteness issue. *Noah Sys.*, 675 F.3d at 1313. Thus, contrary to Plaintiff's suggestion, "[i]n the face of an allegation of indefiniteness, general principles of claim construction apply" and expert testimony is not required. *Datamize*, 417 F.3d at 1348. Here, the lack of corresponding structure for the "means for comparing" limitation renders claims 1, 22, 34, 44, and 50 of the '459 Patent invalid as indefinite.

### B. Claim 13 of the '313 Patent is Indefinite Because It Lacks Any Corresponding Structure for the "Host Interface Means" Limitation.

The "host interface means" limitation in claim 13 reads: "host interface means … for mapping data addressed to the first area into the transmit buffer, mapping data in the receive buffer into the second area, and uploading data from the receive buffer to the host." This limitation is also a "means-plus-function" limitation governed by 35 U.S.C. § 112 ¶ 6. The "host interface means" limitation recites three functions: (1) "mapping data addressed to the first area into the transmit buffer"; (2) "mapping data in the receive buffer into the second area"; and (3) "uploading data from the receive buffer to the host." (Plaintiff's Opening Claim Constr. Brief at 28.)

9

      **1.**      **The '313 Patent Discloses Neither A Single Structure Nor Multiple Structures That May Reasonably Be Grouped Together To Perform The Recited Functions.**

Regarding the first function of claim 13, Judge Ware found that the written description recites the corresponding structure as an XMIT AREA register that is used by the host to write transmit descriptors into the adapter by mapping.  (Second Claim Constr. Order at 16; '313 Patent at col. 10, lines 46-54.)  As to the second function, Judge Ware found that the written description recites the corresponding structures as "transfer descriptor logic [which] maps transfer descriptors from the host system to the transfer descriptor buffer" and an XFER AREA through which transfer descriptors are written into the buffer memory.  (Second Claim Constr. Order at 16; '313 Patent at col. 2, lines 46-47; col. 10, lines 55-58.)  Concerning the third function, Judge Ware found that the written description recites the corresponding structures as "the upload logic [which] is responsive to the transfer descriptors in the transfer descriptor buffer, for transferring data from the receive ring buffer into memory in the host system" and the "upload DMA module 57 [which] performs data transfers from the receive buffer through the RAM interface 50 to the host system."  (Second Claim Constr. Order at 16; '313 Patent at col. 2, lines 48-51; col. 8, lines 65-66.)

As with claim 1 of the '459 patent discussed above Judge Ware concluded that claim 13 of the '313 Patent was arguably invalid because: (1) no single structure is capable of performing all three functions and (2) there was no intrinsic evidence that led the Court to find that a person of ordinary skill in the art would group these individual functional components into a single component.  (Second Claim Constr. Order at 17.)

2. **Dr. Mitzenmacher's Declaration Is Counter To The Understanding of One of Ordinary Skill In The Art.**

As with the '459 Patent, and even when applying the corresponding structures identified by Plaintiff, the XMIT AREA, XFER AREA, and upload DMA logic are not logically contained within a single structure.  Dr. Mitzenmacher argues that block 102 (entitled 'host interface logic') of Figure 3 incorporates the XMIT AREA, the XFER AREA, and the upload DMA logic." (Mitzenmacher Decl. at ¶ 24.)  But his example belies the fact that these are separate components that are not to be grouped as a single component.  While Fig. 3 indeed has a block 102 for the host interface logic (illustrated with a dashed line), block 102 specifically contains two distinct blocks: 107 (titled "XMIT DESCRIPTOR AND DOWNLOAD DMA LOGIC") and 108 (titled "VIEW, XFER, AND UPLOAD DMA LOGIC").  ('313 Patent at Fig. 3.)   According to Dr. Mitzenmacher, the transmit descriptor logic (block 107) is associated with the XMIT AREA and the transfer descriptor logic (block 108) is associated with the XFER AREA. (Mitzenmacher Decl. at ¶ 24.)  XMIT AREA and XFER AREA are explicitly separated into two distinct blocks specifically because they are ***not*** to be to be grouped as a single component. Similarly, there are figures in the specification that address the three structures as separate components.  (*See*, *e.g.*, '313 Patent at Fig. 9 (showing block 151 (download DMA logic) and the XMIT AREA register as distinct components); *id.* at Fig. 11 (showing block 300 (upload DMA logic) and the XFER AREA register separately).)  For these reasons, the lack of corresponding structure for the "host interface means" limitation renders it indefinite and claim 13 of '313 patent invalid.

**C.    Judge Ware's Opinion in *Acer* is Instructive and Cannot be Brushed Aside As Mere "Tentative, Preliminary Findings."**

**1.    The *Acer* Court Found Claim 1 of the '459 Patent And Claim 13 of the '313 Patent To Be "Arguably Invalid" For Indefiniteness.**

Judge Ware issued two claim construction orders in the Northern District of California's *Acer* case.  (Ex. H to Plaintiff's Opening Claim Constr. Brief, *U.S. Ethernet Innovations, LLC v. Acer, Inc., et. al.*, No. 10-cv-03724, First Claim Constr. Order (N.D. Cal. Jan. 31, 2012), ECF No. 586 ("First Claim Constr. Order"); Second Claim Constr. Order.)   Among the terms discussed by Judge Ware in his claim construction orders were the "means for comparing" limitation in claim 1 of the '459 Patent and the "host interface means" of claim 13 of the '313 Patent.  (Second Claim Constr. Order at 8-11, 16.)

In the Second Claim Construction Order, the court agreed with the parties that the terms were means-plus function limitations and found that no single disclosed structure could perform all of the recited functions.  (*Id.* at 17.)  The Court's Orders noted that there was no intrinsic evidence that would lead the Court to find that a person of ordinary skill in the art would group the corresponding structures into a single component.  (*Id.*)  On that basis, Judge Ware ruled that the terms were "arguably invalid."   The parties in *Acer* have yet to have an opportunity to address this issue in briefing or argument.

**2.    The Second Claim Construction Order Should Be Upheld**

This Court recognizes that previous constructions made by other courts may be instructive and provide the basis of the analysis of construing claim terms.   *Negotiated Data Solutions, Inc. v. Apple, Inc.*, 2012 WL 6494240 at *5 (E.D. Tex. Dec. 13, 2012).  By the time Judge Ware issued the Second Claim Constr. Order, he had spent just over two years analyzing the case.  Judge Ware'a analysis should be followed as the reasoning is sound  and the relevant circumstances remain the same..

Plaintiff argues that "Judge Ware was simply flagg[ing] a potential validity issue" for further briefing.  Plaintiff's Opening Claim Constr. Brief at 23.  Defendants disagree.  Judge Ware extensively examined the "means for comparing" limitation and "conclude[d] that the lack of corresponding structure for the subject limitation renders Claim 1 arguably invalid."  (Second Claim Constr. Order at 11.)  If Judge Ware wanted to just flag a potential issue, he could have easily requested further briefing.

Plaintiff points out that Judge Ware "employed a similar tactic" in the First Claim Constr. Order with the "task" and "logic" terms, but later upheld the validity of the claims.  Defendants note that Judge Ware only reconsidered the terms after reviewing pertinent sections of the '459 Patent specification.  (*See* Second Claim Constr. Order at 3-7, 19-20.)  There is no analogous section in the '313 Patent specification that would affect the court's decision that claim 13 is invalid.  That is, there is no intrinsic evidence that discloses a single structure that performs the two functions recited by the "means for comparing" limitation nor that would lead the court to find that a person of ordinary skill in the art would group the corresponding structures into a single component.

### 3.    Judge Ware's Legal Analysis Should Be Upheld.

Plaintiff argues that Judge Ware's reliance on *Cardiac Pacemakers I* is misplaced because "the facts from that case are readily distinguishable from those at issue here."  Plaintiff's Opening Claim Constr. Brief at 24-25.  Plaintiff cites to *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106 (Fed. Cir. 2002) ("*Cardiac Pacemakers II*") for the proposition that it was the specific language in the claim term at issue in *Cardiac Pacemakers I* that required the same means perform both functions, and not every dual-function claim term must disclose a single corresponding structure.  However, the Federal Circuit in *Cardiac Pacemakers II* stated that in the case where the language of the limitations at issue refers to "a means for doing x and

y," "the claim could potentially be ambiguous about whether the limitation required one means for performing both functions x and y, or simply one means for performing function x and one (potentially different) means for performing function y." *Cardiac Pacemakers II*, 296 F.3d at 1115.

The Second Claim Construction Order issued a decade after the Federal Circuit opinion in *Cardiac Pacemakers II*. In applying the reasoning of *Cardiac Pacemakers I*, Judge Ware found that claim 1 of the '459 Patent and claim 13 of the '313 Patent unambiguously required a single means for performing the multiple corresponding functions per *Cardiac Pacemakers II*. As a result, Judge Ware applied the principle that: "[w]hen dual functions must be performed by the 'means,' the patent document must disclose either a single structure that performs both functions or multiple structures, each of which performs one of the functions, but the multiple structures reasonably may be grouped together as subcomponents of a larger component that performs both functions." (Plaintiff's Opening Claim Constr. Brief at 8-9.)

In doing so, Judge Ware correctly found that "there is no single structure that is capable of performing the dual functions of the 'means,'" and "the Court's attention has not been drawn to any intrinsic evidence that would lead the Court to find that a person of ordinary skill in the art would group these individual functional components into a single component." (Second Claim Constr. Order at 11, 16-17.)

Furthermore, claim 13 of the '313 Patent contains similar language to that of the specific language in the claim term at issue in *Cardiac Pacemakers I*. Both the district court and the Federal Circuit noted that the "third monitoring means" recited in the claim at issue required that a single structure perform both recited functions (that of monitoring and activating). *Cardiac Pacemakers I*, 2000 WL 1902191 at *5; *Cardiac Pacemakers II*, 296 F.3d at 1115. In claim 13

of the '313 Patent, a "host interface means" must perform all three recited functions of "mapping data addressed to the first area into the transmit buffer, mapping data in the receive buffer into the second area, and uploading data from the receive buffer to the host.  For all of these reasons, Judge Ware's analysis was sound, and defendants respectfully submit that it should be followed in this case.

## IV.   <u>CONCLUSION</u>

Defendants respectfully request that this Court enter summary judgment of invalidity of independent claims 1, 22, 34, 44, and 50 of the '459 Patent; independent claim 13 of the '313 Patent; and all relevant dependent claims for being indefinite.

Dated: March 7, 2013                        Respectfully submitted,

*/s/ Michael Chibib*
Alan D. Albright
State Bar No. 00973650
Michael Chibib
State Bar No. 00793497
Conor M. Civins
State Bar No. 24040693
Benjamin L. Bernell
State Bar No. 24059451
Alan.Albright@bgllp.com
Michael.Chibib@bgllp.com
Conor.Civins@bgllp.com
Ben.Bernell@bgllp.com
BRACEWELL & GIULIANI LLP
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Telephone: (512) 472-7800
Facsimile: (800) 404-3970

***ATTORNEYS FOR DEFENDANTS
CIRRUS LOGIC, INC., FREESCALE
SEMICONDUCTOR, INC.***

*/s/ Jen-Feng Lee*
Jen-Feng (Jeff) Lee, Pro Hac Vice
Cal. Bar. No. 204328
jflee@ltpacificlaw.com
Kenneth K. Tanji, Jr., Pro Hac Vice
Cal. Bar. No. 162273
ktanji@ltpacificlaw.com
LT PACIFIC LAW GROUP
17800 Castleton Street, #560
City of Industry, California 91748
Phone: (626) 810-7200
Fax: (626) 810-7300

Eric C. Wood
Texas Bar No. 24037737
Scheef & Stone, L.L.P.
500 N. Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4220 Direct
(214) 706-4242 Fax
eric.wood@solidcounsel.com
www.solidcounsel.com

**ATTORNEYS FOR DEFENDANT
TRENDNET, INC.**

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
TX Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Telephone: 903-509-5000
Facsimile: 903-509-5092

A. JAMES ISBESTER (CA SBN 29820)
jisbester@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
Eighth Floor, Two Embarcadero Center
San Francisco, CA 94111
Telephone: 415 576 0200
Facsimile: 415 576 0300

JORDAN TRENT JONES (CA SBN 166600)
jtjones@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1080 Marsh Road
Menlo Park, CA 94025
Telephone: 650-326-2400
Facsimile: 650-326-2422

**ATTORNEYS FOR DEFENDANT
EPSON AMERICA, INC.**

*/s/ Michael Chibib*
Alan D. Albright
State Bar No. 00973650
Michael Chibib
State Bar No. 00793497
Conor M. Civins
State Bar No. 24040693
Benjamin L. Bernell
State Bar No. 24059451
Alan.Albright@bgllp.com
Michael.Chibib@bgllp.com
Conor.Civins@bgllp.com
Ben.Bernell@bgllp.com
BRACEWELL & GIULIANI LLP
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Telephone: (512) 472-7800
Facsimile: (800) 404-3970


Evan Finkel
Evan.Finkel@Pillsburylaw.Com
PILLSBURY WINTHROP SHAW
PITTMAN
LLP
725 S. FIGUEROA ST., SUITE 2800
LOS ANGELES, CALIFORNIA 90017-5406
Tel: 213.488.7037; Fax: 213.226.4058

OF COUNSEL
Melvin R. Wilcox, III
Texas State Bar No. 21454800

YARBROUGH ♦ WILCOX, PLLC

100 E. FERGUSON, SUITE 1015
TYLER, TEXAS 75702
TEL: 903.595.1133; Fax: 903.595.0191
mrw@yw-lawfirm.com


***ATTORNEYS FOR DEFENDANT***
***YAMAHA CORPORATION OF AMERICA***

18

*/s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No 04972020
Findlay Craft, LLP
6760 Old Jacksonville Hwy
Ste. 101
Tyler, TX 75703
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com
Tel: (903)534-1100
Fax: (903)534-1137

Timothy S. Teter
Benjamin G. Damstedt
Jeffrey M. Walker (pro hac vice)
Cooley LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Tel: 650-843-5000
teterts@cooley.com
bdamstedt@cooley.com
jwalker@cooley.com

***ATTORNEYS FOR DEFENDANT CONTROL4 CORP.***

*/s/ Dan D. Davison*
Dan D. Davison
Texas Bar No. 05590900
Richard S. Zembek
Texas Bar No. 00797726
Robert Greeson
Texas Bar No. 24045979
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel: (214) 855-8000
Fax: (214) 855-8200
Email: ddavison@fulbright.com
Email: rzembek@fulbright.com
Email: rgreeson@fulbright.com

***ATTORNEYS FOR DEFENDANT***
***NETGEAR, INC.***

/s/ *Steven G. Schortgen*
Steven G. Schortgen, *Lead Attorney*
Texas State Bar No. 00794603
steve.schortgen@klgates.com
Jennifer Ayers
Texas State Bar No. 24069322
jennifer.ayers@klgates.com
**K&L Gates LLP**
1717 Main St.
Suite 2800
Dallas, TX 75201
214.939.5500
214.939.5849 *Facsimile*

Michael J. Bettinger
California Bar No. 122196
mike.bettinger@klgates.com
Stephen Everett
California Bar No. 121619
stephen.everett@klgates.com
**K&L Gates LLP**
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
415.882.8200
415.882.8220 *Facsimile*
*PRO HAC VICE*

***ATTORNEYS FOR DEFENDANT***
***STMICROELECTRONICS, INC.***

*/s/ Brian Craft*
Brian Craft
Texas Bar No. 04972020
Eric H. Findlay
State Bar No. 00789886
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy
Suite 101
Tyler, TX 75703
Tel.: (903) 534-1100
Fax: (903) 534-1137
Email: bcraft@findlaycraft.com
Email: efindlay@findlaycraft.com

OF COUNSEL:
Paul R. Steadman
Matthew J. Hertko
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, IL 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
Email: paul.steadman@kirkland.com
Email: matthew.hertko@kirkland.com

***ATTORNEYS FOR DEFENDANT
KONICA MINOLTA BUSINESS
SOLUTIONS U.S.A., INC.***

*/s/ Michael C. Smith*
Marc R. Labgold, Ph.D.
Patrick J. Hoeffner
NAGASHIMA & HASHIMOTO
12007 Sunrise Valley Drive
Suite 110
Reston, VA 20191
Telephone: (703) 901-8860
mlabgold@labgoldlaw.com

Michael Charles Smith
SIEBMAN BURG PHILLIPS & SMITH, LLP
P O Box 1556
Marshall, TX 75671-1556
Telephone: (903) 938-8900
Fax: (972) 767-4620
michaelsmith@siebman.com

***ATTORNEYS FOR OKI DATA AMERICAS, INC.***

*/s/ Cono A. Carrano*
Cono A. Carrano, Lead Attorney
(District of Columbia Bar No. 445995)
ccarrano@akingump.com
Jin-Suk Park
(District of Columbia Bar No. 484378)
jspark@akingump.com
Romeao J. Jennings, III
(California State Bar No. 281568)
rjennings@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
1333 New Hampshire Ave NW
Washington, DC 20036
Telephone: (202) 887-4000

Ruben H. Munoz
(Pennsylvania State Bar No. 206420)
rmunoz@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
2001 Market Street, Suite 4100
Philadelphia, PA 19103
Telephone: (215) 965-1200
Facsimile: (215) 965-1210

Iftikhar Ahmed
(Texas State Bar No. 24064795)
iahmed@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
1111 Louisiana Street, 44th Floor
Houston, TX 77002-5200
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

Melissa Richards Smith
(Texas State Bar No. 24001351)
Melissa@gillamsmithlaw.com
**Gillam & Smith, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

***ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD,
SAMSUNG ELECTRONICS AMERICA,
INC., SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, AND SAMSUNG AUSTIN
SEMICONDUCTOR, LLC***

*/s/ Charles E. Phipps*
Charles E. Phipps
Texas State Bar No. 00794457
cphipps@lockelord.com
W. Scott Hastings
Texas State Bar No. 24002241
shastings@lockelord.com
Hamad Hamad
Texas State Bar No. 24061268
hhamad@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**ATTORNEYS FOR DEFENDANT XEROX CORPORATION**

*/s/ Christine S. Yun Sauer*
Cole M. Fauver (MN Bar No. 0243139)
(admitted *pro hac vice*)
Christine S. Yun Sauer (MN Bar No. 0391314)
(Eastern District of Texas Member)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Tel: 612-349-8500
Fax: 612-339-4181
cmfauver@rkmc.com
csyunsauer@rkmc.com

Rickey L. Faulkner
Texas State Bar No. 06857095
COGHLAN CROWSON, LLP
P.O. Box 2665
Longview, TX 75606
Tel: 903-758-5543
Fax: 903-753-6989
rfaulkner@ccfww.com

***ATTORNEYS FOR DEFENDANT DIGI INTERNATIONAL INC. AND NETSILICON, INC.***

_/s/ Michael V. Solomita_
Michael V. Solomita (*Admitted Pro Hac Vice*)
AMSTER ROTHSTEIN & EBENSTEIN
LLP
90 Park Avenue
New York, NY 10016
Phone: 212.336.8000
Fax: 212.336.8001
Email: msolomita@arelaw.com

Melvin R. Wilcox, III
YARBROUGH-WILCOX PLLC
100 E. Ferguson, Suite 1015
Tyler, TX 75702
Phone: 903.595.1133
Email: mrw@yw-lawfirm.com

**ATTORNEYS FOR DEFENDANT RICOH
AMERICAS CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record via the Court's ECF on March 11, 2013.

/s/ *Steven G. Schortgen*
Steven G. Schortgen